IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FELICITAS SALINAS CRUZ,          )
Plaintiff, as next friend of     )
LIZBET CRUZ SALINAS,             )
                                 )
          Plaintiff,             )
                                 )
v.                               )          No. 3:08-01131
                                 )          Judge Nixon
MCINTOSH CONSTRUCTION CO., INC., )          Magistrate Judge Knowles
MCASPHALT, INC., KERRY W.        )
LANKFORD, INDIVIDUALLY AND       )          Jury Demand
D/B/A K. W. LANKFORD EXCAVATING, )
AND DBS & ASSOCIATES ENGINEERING,)
INC.,                            )
                                 )
          Defendants.            )

## ORDER

Pending before the Court is Defendants' Motion for Summary Judgment and supporting

documents (Doc. Nos. 65-69).  Plaintiff has filed a Response and supporting documents (Doc.

Nos. 72-76), including a Statement of Facts (Doc. No. 74).  Defendants replied to Plaintiff's

Statement of Facts.  (Doc. No. 77.)  For the reasons stated herein, the Court **DENIES**

Defendants' Motion for Summary Judgment in its entirety.

## I.    BACKGROUND

Case 3:08-cv-01131   Document 136   Filed 08/12/10   Page 1 of 14 PageID #: 1723

### A. Procedural History

On November 25, 2008, Plaintiff Felicitas Salinas Cruz ("Plaintiff") filed this complaint as next friend of Plaintiff Lizbet Cruz Salinas, her daughter, against Defendants McIntosh Construction Co., Inc. ("McIntosh"), McAsphalt, Inc. ("McAsphalt"), and Kerry W. Lankford, individually and d/b/a K. W. Lankford Excavating ("Lankford") (collectively, "Defendants"). (Doc. No. 1.) On March 13, 2009, DBS & Associates Engineering, Inc. ("DBS"), was added as a defendant upon motion by Plaintiff. (Doc. Nos. 25, 24.) Plaintiff alleges that Lizbet Cruz Salinas suffered injuries in a car accident which was proximately caused by the negligence of Defendants McIntosh, McAsphalt, Lankford, and DBS (collectively, "Defendants"). (Doc. No. 26, at 7.) More specifically, Plaintiff claims that Defendants' negligence resulted in a downed stop sign at the time of the car accident, which allowed the cars involved in the collision to enter the intersection at the same time and hit each other, thereby causing the injuries to Lizbet Cruz Salinas, a passenger in one of the cars. (Id.) This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). (Id. at 2.) Defendants filed a Joint Motion for Summary Judgment on April 5, 2010. (Doc. No. 65.) On August 9, 2010, Defendants McIntosh and McAsphalt made an Offer of Judgment, which Plaintiff accepted. (Doc. No. 98.) Accordingly, this Motion for Summary Judgment will be considered on behalf of Defendants Lankford and DBS.

### B. Factual History

On April 28, 2006, Lizbet Cruz Salinas was traveling in a car driven by her aunt, Silveria Salinas ("Salinas vehicle"). (Doc. No. 26 ¶ 9.) The Salinas vehicle collided with another vehicle driven by Kristie Adkins ("Adkins vehicle") at the intersection of Dunlop Lane and International Boulevard, in Montgomery County, Tennessee. (Id.) The Salinas vehicle was

-2-

going northbound on International Boulevard; the Adkins vehicle was traveling westbound on Dunlop Lane. (Id. ¶¶ 9-10.) When the Salinas vehicle entered the intersection, the Adkins vehicle struck it on its right side. (Doc. No. 72, Ex. 9, at 2.) Lizbet Cruz Salinas, who was 14 years old at the time of the collision, was injured in the accident, and continues to suffer from the ill effects of the collision. (Doc. No. 77, at 3-4, Doc. No. 26, at 3.)

Defendants McIntosh, Lankford, and DBS were involved in the construction of a new portion of International Boulevard leading up to and at the intersection with Dunlop Lane. (Doc. No. 72, Ex. 1, at 3-4.) Lankford was the general contractor; McIntosh[1] was in charge of paving the roadway as a subcontractor; and DBS was contracted as the project engineer. (Id.)

At the time of the collision, the roadway was still under construction; however, DBS instructed Lankford to pull back some distance road closure barriers in order to permit access on the new roadway to area businesses. (Doc. No. 72, Ex. 2, at 2.) The Salinas vehicle was traveling on this stretch of road on April 28, which was not officially open at the time. (Id.) At that time, the stop sign on the right side of International Boulevard, south of Dunlop Lane, had been removed and was lying flat in a ditch on the side of the road, not visible from the roadway. (Doc. No. 77 ¶ 1.) Additionally, because the road was still being constructed and paved, the stop bars that would normally have been present at the intersection were also not there. (Doc. No. 72, Ex. 3, at 62.)

Frank Lepkowski, a route merchandiser for the Coca-Cola plant on Dunlop Lane, witnessed the collision. (Doc. No. 69, Ex. 1, at 30.) During his deposition, he stated that the

---

[1] Defendant McAsphalt, Inc., is the "alter ego" of Defendant McIntosh. (Doc. No. 11, at 2.)

Silveria Salinas "didn't stop, she slowed down real slow." (Id. at 31.) He later stated that the Salinas vehicle made a "rolling stop" at the intersection, slowing down to an estimated "two [or] three miles an hour maybe," before proceeding forward into the intersection. (Id. at 36, 40.) Mr. Lepkowski characterized this slow-down as a "rolling stop" at least three times during his deposition. (Id. at 36, 38, 39.) He also stated at least three times during his deposition that he did not see the Salinas vehicle stop. (Id. at 31, 40.) For the purposes of this motion, Plaintiff does not dispute that Mr. Lepkowski is familiar with the intersection in question, that nothing obscured his view of the collision, and that nothing was distracting his attention at the time. (Doc. No. 73 at 4, 6.)

Plaintiff Felicitas Salinas Cruz was deposed in this matter as well. (Doc. No. 69, Ex. 1, at 1.) During her deposition, she stated that her daughter Lizbet had told her that "in order to go through, [Silveria Salinas] had to stop first to . . . yield to the other people." (Id. at 9.) She also stated that, "[E]very time anybody asks her, . . . she always says the same thing, that they stopped before, but then starting from that moment on she never knew what happened." (Id. at 10.) Ms. Salinas Cruz also stated that Silveria Salinas had told their mother that she did stop the Salinas vehicle before the collision, but that "at the same time that they started up again, everybody else started at the same time, too, together." (Id.) Ms. Salinas Cruz stated that Silveria had told her, as well, on one occasion that "they had stopped before crossing," and that when they began to move again, other cars "also started moving." (Id. at 11.)

During her deposition, Plaintiff Lizbet Salinas Cruz stated that she remembered "either her aunt or her uncle stopping at a stop sign at that intersection on an unspecified day prior to the accident. (Id. at 18.) Lizbet also answered "Yes" in response to the question, "Do you

-4-

remember your aunt stopping at the stop sign?"  (Id.)

Lieutenant Orville Lewis, of the Tennessee Highway Patrol, was a responder to the scene of the accident.  (Doc. No. 72, Ex. 3, at 4.)  In his capacity as an advanced traffic investigator, Lt. Lewis has investigated "thousands" of car accidents.  (Id. at 3.)  At his deposition, Lt. Lewis testified that he did not believe the Salinas vehicle could have been traveling at a speed as low as two or three miles per hour, because the placement of the Salinas vehicle after the accident indicated to him that it would have had more momentum than such a low speed would indicate. (Id. at 9.)

Trooper Andy Shelton, an investigator with the Tennessee Highway Patrol's Critical Incident Response Team, filed a Reconstructionist's Report about this collision.  (Doc. No. 72, Ex. 9.)  In his report, he stated that the Salinas vehicle was traveling between 18 and 27 miles per hour when it was struck by the Adkins vehicle, basing this assertion on "Witness Statements, Momentum and Minimum Speed formulas, [and] evidence from the scene."  (Id. at 2.)  Trooper Shelton also stated in his report that the Salinas vehicle did not stop prior to entering Dunlop Lane, and cited "Witness statements [and] evidence obtained at the scene" as the basis for that assertion.  (Id.)

Dr. Gilbert L. Rhoades, Jr., was deposed in his capacity as Plaintiff's engineering expert. (Doc. No. 72, Ex. 10.)  Dr. Rhoades testified that the physical evidence of the collision (e.g., "bent sheet metal," "the physics of the accident," "post impact travel," and "energy levels" in the Adkins and Salinas vehicles) led him to believe that the Salinas vehicle did not make a "rolling stop" before the collision.  (Id. at 3.)  He also pointed at the "damage on the cars," "the point of impact," and "the rest position" as evidence of the physical dynamics of the collision which led

-5-

him to that belief.  (Id.)  Dr. Rhoades testified that he believed, after making "basic energy

calculations" which took into account crush damage, crush energy, and post-impact travel of the

vehicles, that the vehicles were traveling at comparable speeds of approximately 38 to 40 miles

per hour.  (Id. at 4-5.)


## II.    STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact

and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Generally, summary judgment is proper where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1998)

(quoting Fed. R. Civ. P. 56(c)).  All the facts and the reasonable inferences to be drawn from

those facts must be viewed in the light most favorable to the non-moving party.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 255 (1986); see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 573 (6th Cir.

2003) (en banc).

In order to succeed, the moving party must show that there is an absence of evidence to

support the non-moving party's case and that "the evidence is so one-sided that one party must

-6-

prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 233 (6th Cir. 1996). A movant for summary judgment makes a sufficient showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the non-movant's case. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. See id.

The non-movant, however, may not rely solely on conclusory allegations in the complaint to defeat a motion for summary judgment, but must come forward with affirmative evidence that establishes its claims and raises genuine issues of material fact. Id. at 324. The "mere possibility" of a factual dispute is not enough. Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986). A genuine issue of material fact is one which, if proven at trial, would lead a reasonable fact finder to find in favor of the non-moving party. Anderson, 477 U.S. at 247-48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome-determinative facts will bar a grant of summary judgment. Id. at 248.

Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. See Celotex, 477 U.S. at 317. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989) (citations omitted). On the other hand, if this Court determines

-7-

that a reasonable fact finder would be able to return a verdict for the non-moving party, it must

deny summary judgment.  See Matsushita, 475 U.S. at 249-50.


III.    ANALYSIS

Defendants argue in their supporting brief that Plaintiff's negligence claim cannot

succeed because Plaintiff cannot prove causation in fact (Doc. No. 66 (citing Dillard v.

Vanderbilt University, 970 S.W.2d 958, 960 (Tenn. App. 1998); Mosley v. Metropolitan

Government of Nashville and Davidson County, 15 S.W.3d 119, 124 (Tenn. App. 2004);

Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993))).  Defendants claim that no reasonable

juror could find, on the evidence presented, that Lizbet Cruz Salinas's injuries were caused by

the alleged negligent conduct of the defendants.  They argue that the crux of Plaintiff's

negligence claim is that Silveria Salinas failed to stop at the intersection of International

Boulevard and Dunlop Lane because the stop sign at that intersection was down, and that this

failure to stop was a cause in fact of the collision and the ensuing injuries to Lizbet Salinas Cruz.

(Doc. No. 66, at 6.)  Defendants claim, however, that the evidence in the record shows that

Silveria Salinas "either came to a complete stop at the intersection or at worst, made a rolling

stop in which she slowed down to 2-3 miles per hour, looked both ways, and only then pulled out

in front of an oncoming vehicle." (Id. at 7.)  If this is so, Defendants claim, then "the condition

of the stop sign had nothing to do with the cause of the accident in this case," presumably

because Silveria Salinas did what she would have done even if the stop sign had been erect (that

is, stopped or come to a "rolling stop").  (Id.)


-8-

In response, Plaintiff makes a number of arguments.  (Doc. No. 72.)  First, she argues that Defendants, in their Motion for Summary Judgment, ignore the physical evidence of the collision, which stands in opposition to Defendants' contention that the Salinas vehicle stopped prior to the collision.  (Id. at 6-7.)  Second, Plaintiff argues that the basis for Defendants' claim that the Salinas vehicle stopped is unreliable.  Plaintiff claims that the statements of Felicitas Salinas Cruz as to whether Silveria Salinas told her that the car stopped are inadmissible hearsay, vague, ambiguous, and get other details of the collision wrong.  (Id. at 9.)  Plaintiff also claims that Felicitas Salinas Cruz's testimony about Lizbet Cruz Salinas's statements to others that the car stopped are unreliable because the nature of Lizbet's injuries make her memories of the accident suspect.  (Id. at 10.)  She claims, too, that Lizbet's testimony at her deposition is vague, ambiguous, and consistent with memory problems caused by traumatic brain injury.  (Id.)  Third, Plaintiff notes that Defendants' claims that the car stopped are based on evidence that is inconsistent.  Defendants put forward the testimony of Felicitas Salinas Cruz and Lizbet Cruz Salinas to show that the Salinas vehicle stopped, but the testimony of Mr. Lepkowski shows that the Salinas vehicle did not stop, but rather only slowed down.  (Id. at 10-11.)  Plaintiff also notes that Defendants' proffered uncontested facts only claim that: 1) that the Salinas vehicle came to a rolling stop; and 2) that statements were made indicating that the Salinas vehicle came to a stop, not that the Salinas vehicle actually stopped.  (Id. at 11, citing Doc. No. 67  ¶¶ 21, 3, 4.) Plaintiff also argues that Mr. Lepkowski's deposition testimony was more tentative than Defendants' proffered uncontested facts indicate in its estimations of how fast the Salinas vehicle was traveling during the rolling stop.  (Doc. No. 72, at 11-12.)  Finally, Plaintiff argues that Defendants' Motion ignores other dangerous conditions allegedly created by Defendants'

-9-

negligence, such as the opening of the road when it was still being paved, the lack of stop bars, and the lack of a flagman, in addition to the downed stop sign. (Id. at 12-15.)

With respect to a negligence claim, "[s]ummary judgment is appropriate when an essential element of negligence is missing." Kellner v. Budget Car & Truck Rental, Inc., 359 F.3d 399, 406 (6th Cir. 2004) (citing Doe v. Linder Const. Co., Inc., 845 S.W.2d 173, 183 (Tenn. 1992)). In order to establish a negligence claim, Plaintiff must be able to establish "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." Haynes v. Hamilton County, 883 S.W.2d 606, 611 (Tenn. 1994) (citations omitted). If the evidence shows that no reasonable jury could find for Plaintiff on any one of these elements, Defendants' motion for summary judgment must be granted. See Kellner, 359 F.3d at 406.

To establish causation in fact, Plaintiff must be able to demonstrate that "the circumstances must be such that the injury would not have occurred but for [the defendant's conduct]." Wyatt v. Winnebago Indus., Inc., 566 S.W.2d 276, 280 (Tenn. App. 1977). When a cause is deemed to be a cause in fact, it must also be a proximate cause, but "[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the nearest to the injury, provided it is a substantial factor in producing the end result." Kellner, 359 F.3d at 407. However, a "mere possibility of such causation is not enough . . . ." Norris v. E. Tenn. Child.'s Hosp., 195 S.W.3d 78, 86 (Tenn. App. 2005).

The Court finds that there is a genuine dispute of material fact as to whether Defendants' alleged negligence constitutes a cause in fact. Viewing the facts in the light most favorable to

Plaintiff, the Court must conclude that there is a genuine issue of material fact as to whether the downed stop sign at the intersection was a cause in fact of the collision and the ensuing injuries to Plaintiff.

Defendants claim that statements by Silveria Salinas, Lizbet Cruz Salinas, and Frank Lepkowski establish that the Salinas vehicle stopped prior to the collision, rendering the downed stop sign irrelevant. However, Plaintiff is correct that these statements are inconsistent with each other: Mr. Lepkowski repeatedly declined to testify that the car stopped, and insisted that it slowed down to a "rolling stop"; however, according to Defendants, both Silveria Salinas and Lizbet Cruz Salinas stated that the vehicle "stopped." (See Doc. No. 67 ¶¶ 3, 4.)

Defendants could argue that Silveria Salinas's and Lizbet Cruz Salinas's statements that the car "stopped" could be taken to encompass what Mr. Lepkowski termed a "rolling stop" in order to make the evidence accord. However, such an argument would underline the defects in their statements, already pointed out by Plaintiff in her Response.

These defects include the fact that Lizbet Cruz Salinas suffered traumatic brain injury in the collision, and has said that she does not have a complete memory of the accident. (See Doc. No 72, Ex. 8, at 2-4.) Dr. Mary A. Gonzalez, a medical expert designated by Plaintiff, testified at her deposition that traumatic brain injury can cause patients to be unable to recall "the history of the injury." (Doc. No. 72, Ex. 7, at 2-3.) In the statements at her deposition, Lizbet Cruz Salinas stated that she remembered her aunt stopping at the stop sign at an indeterminate point in time, and that either her aunt or her uncle had stopped at a stop sign at that intersection on an indeterminate day before the accident. (Doc. No. 72, Ex. 8, at 2.) The evidence that Lizbet Cruz Salinas has said that the car stopped before the collision comes from the deposition of Felicitas

-11-

Salinas Cruz, who said that Lizbet has told her and others that the car stopped before the collision, but that after that moment, "she never knew what happened." (Doc. No. 72, Ex. 11, at 2.) However, Lizbet did not repeat this at her own deposition. (Doc. No. 72, Ex. 8.) The Court finds that Lizbet Cruz Salinas's statements that the car had stopped at the intersection at some undetermined time are unhelpful, and her secondhand statements that the car stopped before the collision are unreliable for the purposes of this motion.

Defects also exist with Silveria Salinas's statement that the car stopped. Plaintiff alleges that her statements were vague, ambiguous, likely incorrect in other particulars,[2] and, relevantly, being reported secondhand by her sister, Felicitas Salinas Cruz. Plaintiff notes that the statements by Silveria Salinas, as reported by Felicitas Salinas Cruz, constitute inadmissible hearsay under Fed. R. Evid. 802, and "cannot be considered on a motion for summary judgment." (Doc. No. 72, at 8-9 (citing Sutherland v. Mich. Dep't of Treasury, 344 F.2d 603, 620 (6th Cir. 2003). Defendants argue that Silveria Salinas's statement that the car stopped is a statement against interest under Fed. R. Evid. 804(b) and falls under one of the hearsay exceptions. Even assuming for the moment that Silveria Salinas is "unavailable" under Fed. R. Evid. 804(a), it is not clear to this Court that the statement attributed to Silveria was "so far tended to subject [her] to civil . . . liability" "that a reasonable person in [her] position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3). Defendants argue that her statement that "she stopped and only then pulled into the path of an oncoming vehicle" "exposed her to civil liability to the Plaintiffs." (Doc. No. 66, at 4 n.1.) However,

---

[2] Silveria also reported that the Adkins vehicle stopped, a claim controverted by all other evidence in the record. See Doc. No. 72, at 9.

Plaintiff notes that the entirety of Silveria's statement had the effect of blaming the other driver for the collision, after Silveria had stopped to yield the right of way and only then progressed into the intersection.  (Doc. No. 72, at 9-10.)  The Court also notes that a statement by Silveria Salinas that she did not stop, but rather proceeded through the intersection without looking or stopping would have perhaps left her <u>more</u> open to civil liability than a statement that she stopped, and that the collision was the fault of the other driver, who crossed out of turn and was "on top of her."  (Doc. No. 72, Ex. 11, at 4.)  The Court is not willing to find that her statement that the car stopped "so far tended to subject [her] to civil . . . liability" "that a reasonable person in [her] position would not have made the statement unless believing it to be true." Accordingly, the Court finds that the statements made by Silveria Salinas that the car stopped are inadmissible hearsay and cannot be used to support Defendants' Motion.

Defendants, then, are left with the testimony of Mr. Lepkowski, that the Salinas vehicle came to a "rolling stop" before the collision.  However, Plaintiff is correct that there is evidence in the record that controverts his testimony.  Lt. Lewis testified that it was his opinion as an advanced traffic investigator, judging from the momentum of the vehicles, that Mr. Lepkowski was incorrect that the Salinas vehicle was only traveling at "that minimum amount of speed" subsequent to a rolling stop.  (Doc. No. 72, Ex. 3, at 9.)  The Reconstructionist's Report filed by Trooper Shelton states that the Salinas vehicle was "traveling at between 18 and 27 miles per hour" and that it "did not stop prior to entering Dunlop Lane."  (Doc. No. 72, Ex. 9, at 2.)  Dr. Rhoades testified that the physical evidence led him to believe that the Salinas vehicle was traveling at a speed between 38 and 40 miles per hour, and that such a speed was incompatible

-13-

with Mr. Lepkowski's testimony that the car came to a rolling stop. (Doc. No. 72, Ex. 10, at 2-3, 5.)

Given these facts, the Court must find that there exists a genuine issue of material fact as to whether the Salinas vehicle did or did not come to a stop (or a "rolling stop") prior to the collision. A reasonable jury may find, on these facts, that Silveria Salinas failed to stop her vehicle before entering the intersection, and that Defendants' negligence regarding the downed stop sign was a cause in fact of her failure to stop, and therefore of the collision and the ensuing injuries to Plaintiff (notwithstanding the potential influence of other factors).

The Court therefore **DENIES** Defendants' Motion for Summary Judgment.


## IV.    CONCLUSION

Defendants failed to demonstrate the absence of a genuine dispute of material fact regarding Plaintiff's negligence claim in the instant matter. For the reasons set forth above, the Court hereby **DENIES** Defendants' Motion for Summary Judgment.

It is so ORDERED.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-14-